UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| THE BASKETBALL CLUB OF SEATTLE, LLC, a Washington limited liability company,<br><br>                 Nominal Plaintiff,<br>and<br><br>CANARSIE HOLDINGS LLC, a Washington limited liability company,<br><br>                 Derivative Plaintiff,<br>v.<br><br>THE PROFESSIONAL BASKETBALL CLUB, LLC, an Oklahoma limited liability company,<br>                 Defendant. | (DERIVATIVE ACTION)<br><br>No.<br><br>COMPLAINT FOR RELIEF ARISING OUT OF FRAUD AND MISREPRESENTATION |

## INTRODUCTION

1.    In early 2006, when The Basketball Club of Seattle ("BCOS") offered the Seattle SuperSonics for sale, it was critical to BCOS that any potential buyer be committed to keeping the team in Seattle. Defendant, a group of Oklahoma City businessmen, knew that BCOS would only sell it the team if defendant persuaded BCOS that it wanted to keep the Sonics in Seattle. For that reason, the Oklahoma City group told BCOS at the time it purchased the team that "it is our desire to have the Sonics and the Storm continue their

COMPLAINT– Page 1

YARMUTH WILSDON CALFO PLLC
FOURTH & MADISON
925 FOURTH AVENUE, SUITE 2500
SEATTLE WASHINGTON 98104
T 206.516.3800   F 206.516.3888

dockets.Justia.com

existence in the Greater Seattle Area and it is not our intention to move or relocate the team." That statement was false from the moment it was made. The Oklahoma City group's true intention, as later described candidly by one of its principal owners, was to move the team to Oklahoma City at the earliest possible time: "We didn't buy the team to keep it in Seattle, we hoped to come here [to Oklahoma City]."

Defendant fraudulently induced BCOS to sell the Sonics to it, and actively concealed that deception. These Oklahoma City businessmen wanted a team that would play in Oklahoma City—not in Seattle. They were willing to lie, and did lie, to complete the deal. Under these circumstances, principles of law and equity do not permit defendant to continue to own the property it fraudulently obtained.

This lawsuit is brought derivatively on behalf of BCOS by BCOS member Canarsie Holdings LLC, a limited liability company owned by Howard Shultz, who served as Chairman of the BCOS Board at the time the Sonics were sold. The lawsuit seeks to deprive the Oklahoma City group of the fruits of its deception. BCOS asks this Court to find that the fraudulently-procured property constitutes a constructive trust that must be conveyed to an honest buyer whose true intention is to keep the Sonics in the Seattle area. BCOS also seeks a declaratory judgment that the sale of the Sonics was fraudulently induced and is therefore voidable at the option of BCOS.

## PARTIES

2.  Nominal plaintiff The Basketball Club of Seattle ("BCOS") is a limited liability company organized under the law of the State of Washington. Until it sold the team to defendant, BCOS owned and operated the National Basketball Association

COMPLAINT– Page 2

YARMUTH WILSDON CALFO PLLC
FOURTH & MADISON
925 FOURTH AVENUE, SUITE 2500
SEATTLE WASHINGTON 98104
T 206.516.3800   F 206.516.3888

("NBA") professional basketball team known as the Seattle SuperSonics from 2001 to 2006.

3.  Derivative plaintiff Canarsie Holdings LLC is a limited liability company organized under the law of the State of Washington and is a member of BCOS. Howard Schultz is the sole member of Canarsie Holdings LLC.

4.  Defendant The Professional Basketball Club LLC is an Oklahoma limited liability company registered to do business in the State of Washington and that does business in King County, Washington. Currently, defendant owns and operates the Sonics.

## DERIVATIVE ALLEGATIONS

5.  Plaintiff is entitled to bring this action pursuant to RCW 25.15.370, which permits a member of a limited liability company to sue in the right of a limited liability company to recover a judgment in the company's favor.

6.  Plaintiff is bringing this action because BCOS is not able to do so, and an effort to cause BCOS to bring this action is not likely to succeed. BCOS has not been in operating mode since the sale of the Sonics to defendant was approved on August 21, 2006; BCOS is not able to reconstruct a decision-making process in a timely manner, given the need to file this lawsuit at this time; and BCOS currently does not have the financial resources to finance this litigation.

7.  At all times relevant to this Complaint, including at the time of the transaction at issue and at the time this action is brought, plaintiff has been a member of BCOS.

YARMUTH WILSDON CALFO PLLC
FOURTH & MADISON
925 FOURTH AVENUE, SUITE 2500
SEATTLE WASHINGTON 98104
T 206.516.3800   F 206.516.3888

8. This action is not a collusive one designed to confer jurisdiction on this Court that it would not already have. Plaintiff will fairly and adequately represent the interests of the members of BCOS in enforcing BCOS's rights in this action.

## JURISDICTION & VENUE

9. Federal diversity jurisdiction exists pursuant to 28 U.S.C. § 1332 because the plaintiff is a resident of a different state from the defendant and because the value of the matter in controversy exceeds $75,000.

10. Venue in this district is proper pursuant to 28 U.S.C. § 1391 because a substantial part of the events or omissions on which the claim is based occurred in the Western District of Washington.

## FACTS

11. On July 14, 2006, BCOS entered into a contract to sell the Seattle SuperSonics to defendant. The sale was documented by the "National Basketball Association Franchise Purchase Agreement by and among the Professional Basketball Club, LLC and the Basketball Club of Seattle, LLC" (the "Purchase Agreement"). The contract was contingent on approval by a majority of the BCOS ownership. On August 21, 2006, a majority of BCOS members approved the sale.

12. To persuade BCOS to sell the Sonics to them, the Oklahoma City group represented to BCOS, its members, and its directors, that the Oklahoma City group wanted to keep the team in Seattle. For example, in a July 13, 2006 teleconference, as the BCOS Board of Directors was considering whether to approve the sale, Clay Bennett and G. Edward Evans both told the BCOS Board that it was their desire to keep the Sonics in the Puget Sound area. Messrs. Bennett and Evans knew or should have known when they made

COMPLAINT– Page 4

YARMUTH WILSDON CALFO PLLC
FOURTH & MADISON
925 FOURTH AVENUE, SUITE 2500
SEATTLE WASHINGTON 98104
T 206.516.3800  F 206.516.3888

these statements that the Board would rely on their statements in making its decision whether to approve the sale of the Sonics.

13. To ensure that defendant's representations—which were critical to BCOS—were memorialized, Howard Schultz, who was Chairman of the BCOS Board of Directors, insisted that Clay Bennett, his counterpart in the Oklahoma City group, execute a side letter confirming the Oklahoma City group's statements. The Oklahoma City group agreed, and in a letter dated July 18, 2006, on the stationary of defendant The Professional Basketball Club, LLC, Mr. Bennett wrote to Mr. Schultz that "it is our desire to have the Sonics and the Storm continue their existence in the Greater Seattle Area," and specifically denied any "intention to move or relocate" the Sonics if the group could negotiate a lease arrangement. In fact, the Oklahoma City group did not desire to continue ownership of the Sonics in Seattle under any circumstances, even if it could negotiate a favorable lease.

14. As part of the sale, the Oklahoma City group also made a commitment to use "good faith best efforts" to arrange a new Sonics home arena plan. That commitment was included in the Purchase Agreement, which provided in Section 5.3 that "for a period of 1 to 12 months after the Closing Date, Buyer shall use good faith best efforts to negotiate an arena lease, purchase, use or similar arrangement in [the Greater Seattle Area]." Mr. Bennett also reaffirmed this commitment in his July 18, 2006 side letter to Mr. Schultz.

15. During the period that Mr. Bennett and his group were lobbying BCOS members and the Seattle public to secure their approval of the sale, Mr. Bennett made numerous public statements confirming the commitments and representations he had made to BCOS. For example:

COMPLAINT- Page 5

YARMUTH WILSDON CALFO PLLC
FOURTH & MADISON
925 FOURTH AVENUE, SUITE 2500
SEATTLE WASHINGTON 98104
T 206.516.3800   F 206.516.3888

a. At a news conference in Seattle on July 18, 2006 announcing the proposed sale, Mr. Bennett was reported as saying: "The Sonics and the Storm are synonymous with Seattle, and it is our desire to have the Sonics and Storm build upon their great legacies in the greater Seattle area. We believe with the right dynamics on the court, the right community support, the right business model and a financially committed ownership group that recognizes and respects Seattle, we can succeed here for decades to come."

b. At a press conference on August 9, 2006—less than two weeks before the BCOS membership voted to approve the sale—Mr. Bennett said: "Our commitment is to this area and this marketplace. That's why we bought the team, was to invest in what we believe is a compelling opportunity in a very important, emerging, international city that we are very excited about being part of. We're committed to this."

16. Thus, in the Purchase Agreement, in the side letter, and in numerous statements made at the time, the Oklahoma City group represented and committed that *as of the time they signed the Purchase Agreement, and continuing to the time the BCOS members approved the sale*, it was the Oklahoma City group's desire and intention to keep the Sonics in the Seattle area, and for the group to remain invested in the Sonics over the long term.

17. However, from statements later made by members of the Oklahoma City group (and from emails recently disclosed in pending federal court litigation), it is clear—contrary to the representations and commitments defendant made at the time it signed the Purchase Agreement—that defendant's representations were false. Indeed, defendant did not desire or intend to keep the team—or itself—in the Seattle area any longer than necessary. For example:

COMPLAINT– Page 6

YARMUTH WILSDON CALFO PLLC
FOURTH & MADISON
925 FOURTH AVENUE, SUITE 2500
SEATTLE WASHINGTON 98104
T 206.516.3800  F 206.516.3888

a. In an email written by Clay Bennett just *two days* before the sale, Mr. Bennett confided to his co-owners that he was comfortable with the Purchase Agreement's good faith provision because, in the event a Seattle arena deal could be negotiated, the Oklahoma City group could simply sell the team in a "sweet flip," and leave Seattle, and the Oklahoma City group "would still be in good shape for something in OKC." This recently-discovered email makes clear that the Oklahoma City group never intended to own a team that would continue playing in Seattle and that Mr. Bennett lied when he told BCOS and the Seattle public on August 9, 2006 that "our commitment is to this area and this marketplace."

b. In a July 2006 email to his co-owners celebrating the sale, Aubrey McClendon, one of the four principal members of the Oklahoma City group, boasted that the team should be called "the OKLAHOMA CITY SONIC BOOM (or maybe SONIC BOOMERS!) baby!!!!!!"

c. In August 2007, Mr. McLendon stated for the public record that: "We didn't buy the team to keep it in Seattle, we hoped to come here [Oklahoma City]. We know it's a little more difficult financially here in Oklahoma City, but we think it's great for the community and if we could break even we'd be thrilled." In response to Mr. McClendon's candor, the NBA fined him a record-breaking $250,000—for telling the truth.

d. In another email written during the period in which the Oklahoma City group was required to use good faith best efforts to keep the team in Seattle, Mr. Bennett stated that he "is a man possessed" and that the group would "do everything we can" to move the team to Oklahoma City for the following season.

COMPLAINT– Page 7

YARMUTH WILSDON CALFO PLLC
FOURTH & MADISON
925 FOURTH AVENUE, SUITE 2500
SEATTLE WASHINGTON 98104
T 206.516.3800   F 206.516.3888

e. And, most recently, Mr. Bennett was reported as admitting at a press conference in New York on April 18, 2008 that "perhaps all along [owners McClendon and Tom Ward] wanted to have a team in Oklahoma City."

18. During the period that Mr. Bennett and his group were lobbying BCOS members and the Seattle public to secure their approval of the sale, Mr. Bennett and his group not only misrepresented and omitted material facts, but also actively concealed material facts from BCOS. Among other things, Mr. Bennett and his group did not disclose to BCOS that they did not want to own a Seattle based team even if appropriate lease arrangements for an arena could be secured, and that they only wanted to continue ownership of the team if it could be moved to Oklahoma City. This concealment is demonstrated by Mr. Bennett's "sweet flip" email, in which he makes it clear that if appropriate lease arrangements were secured for the team to remain in Seattle, he and his group would sell the team and attempt to secure another NBA franchise in their hometown, Oklahoma City.

19. Further evidence of the false and deceptive commitments and representations made by the Oklahoma City group is the insufficiency of their efforts to arrange a new arena plan despite their agreement to use "good faith best efforts" to enter into a lease agreement in Seattle. The Oklahoma City group reluctantly went through the motions to arrange a new arena plan, but never wanted or intended that their effort be successful. On information and belief, the group failed to (i) hire or support a lobbying team sufficient to gain the support of the Washington legislature for a new arena; (ii) propose a plan to the legislature until too late in the session for the plan to be feasible; (iii) propose a reasonable

COMPLAINT– Page 8

YARMUTH WILSDON CALFO PLLC
FOURTH & MADISON
925 FOURTH AVENUE, SUITE 2500
SEATTLE WASHINGTON 98104
T 206.516.3800  F 206.516.3888

plan to the legislature, instead proposing a plan that required $400 million in public subsidies; or (iv) to consider viable proposals to expand Key Arena.

20. As recently as last week, defendant engaged in further attempts to conceal its fraud by making additional false statements to the public. Only days ago, Mr. Bennett stated in a videotaped press conference that his April 17, 2007 "man possessed" email was intended to convey that "I am only beginning; I will do everything I can to get this done <u>in Seattle</u>." In fact, the email's reference plainly was to getting it done <u>in Oklahoma City</u>. This is clear from Mr. Bennett's other statements contemporaneous with the email. For example, in an email to an NBA representative on April 23, 2007 (just six days after the man possessed email), Mr. Bennett told the NBA representative that there were no reasonable prospects for an arena in Seattle. Mr. Bennett went on in the email to tout the Oklahoma City group's "unique relationship with the [Oklahoma City] corporate community and . . . fan base. He concluded that the notion of the NBA being the only game in [Oklahoma City] and indeed the only professional franchise in the state is compelling."

21. The Oklahoma City group fraudulently and/or negligently induced BCOS to enter into the Purchase Agreement by failing to disclose to BCOS at the time the Purchase Agreement was signed that the group's desire was to move the Sonics to Oklahoma City at the earliest possible time. BCOS would not have sold the Sonics to the Oklahoma City group if BCOS had known at the time that the group's true intention was to move the Sonics to Oklahoma City.

22. BCOS's ability to obtain, and the Court's ability to fashion, appropriate equitable relief based on the foregoing allegations requires the disclosure of complete information regarding the Sonics' current financial condition. BCOS presently lacks this

COMPLAINT– Page 9

YARMUTH WILSDON CALFO PLLC
FOURTH & MADISON
925 FOURTH AVENUE, SUITE 2500
SEATTLE WASHINGTON 98104
T 206.516.3800  F 206.516.3888

information. BCOS does not know, for example, the amount of loans incurred by defendant, the amount of losses sustained by the Sonics since the sale by BCOS (which amount is alleged to be much larger than expected as a result of the Oklahoma City group having intentionally mismanaged the Sonics to improve their case for breaking their lease), the nature and extent of long term contracts or other financial commitments.

## FIRST CLAIM FOR RELIEF

### (Fraudulent Inducement)

23. BCOS repeats and realleges each of the allegations set forth above.

24. Defendant made material misrepresentations of fact, including that it was the Oklahoma City group's desire to keep the Sonics in the greater Seattle area, and that the group wanted to own a Seattle-based team over the long term. These representations were false when made because, in fact, the Oklahoma City group desired to move the Sonics to Oklahoma City at the earliest possible time and intended to sell the team in a "sweet flip" even if a favorable arena arrangement could be obtained.

25. BCOS had a right to rely on the representations of the defendant regarding the Oklahoma City group's desire to keep the Sonics in Seattle.

26. In entering into the Purchase Agreement, BCOS justifiably relied on defendant's representation that it was the Oklahoma City group's desire to keep the team in Seattle and was committed to owning a Seattle-based team over the long term. Had defendant revealed the truth at the time of the sale, BCOS would not have entered into the Purchase Agreement.

27. Defendant fraudulently induced BCOS to sell the Sonics to it by misrepresenting its state of mind and failing to disclose that the Oklahoma City group

YARMUTH WILSDON CALFO PLLC
FOURTH & MADISON
925 FOURTH AVENUE, SUITE 2500
SEATTLE WASHINGTON 98104
T 206.516.3800   F 206.516.3888

desired at the time of the sale to move the Sonics to Oklahoma City. The Oklahoma City group is not entitled to continue ownership of the Sonics, a property they fraudulently procured.

28. BCOS has been harmed by defendant's intentional misrepresentations, omissions, and concealment.

## SECOND CLAIM FOR RELIEF

### (Negligent Misrepresentation)

29. BCOS repeats and realleges each of the allegations set forth above.

30. Defendant, in the course of its business, supplied material false information including that (a) it was the Oklahoma City group's desire to keep the Sonics in Seattle, and (b) the Oklahoma City group was committed to owning a team in Seattle over the long term. Defendant should have known that these statements were untrue.

31. BCOS reasonably relied to its detriment on these statements in entering into the Purchase Agreement.

32. BCOS has been harmed by defendant's negligent misrepresentations and omissions.

## REQUEST FOR RELIEF

WHEREFORE, in light of the uncertainty surrounding the current condition of the assets fraudulently obtained by defendant, plaintiff requests the following relief:

1. For a declaratory judgment that the Purchase Agreement was induced by fraud and is therefore voidable at the option of BCOS;

COMPLAINT– Page 11

YARMUTH WILSDON CALFO PLLC
FOURTH & MADISON
925 FOURTH AVENUE, SUITE 2500
SEATTLE WASHINGTON 98104
T 206.516.3800  F 206.516.3888

2. For equitable relief, including but not limited to the imposition of a constructive trust from which defendant can be ordered to convey the Sonics to an honest buyer who desires to keep the Sonics in Seattle;

3. For an order appointing a receiver in equity to manage the assets at issue in this litigation for the benefit of the beneficiary of the constructive trust referenced in Paragraph 2, above;

4. For an order requiring defendant to provide plaintiff a full and complete accounting of the financial condition of the Sonics, so that BCOS and potential buyers can fairly and accurately assess its financial condition;

5. For a preliminary injunction prohibiting defendant from taking any action that would compromise the value of the Sonics or otherwise interfere with the Court's ability effectively to render the relief sought by BCOS in this Complaint;

6. For plaintiff's attorneys fees and costs of suit; and

7. For whatever additional relief the Court may determine to be just and equitable.

Dated: April 22, 2008.

YARMUTH WILSDON CALFO PLLC

By: _____
Richard C. Yarmuth, WSBA # 4990
Angelo J. Calfo, WSBA #27079
Seth Wilkinson, WSBA #31607
925 Fourth Avenue, Suite 2500
Seattle, Washington 98101
Telephone: (206) 516-3800
Facsimile: (206) 516-3888
E-mail: yarmuth@yarmuth.com
          acalfo@yarmuth.com
          swilkinson@yarmuth.com

Counsel for Plaintiff

COMPLAINT– Page 12

YARMUTH WILSDON CALFO PLLC
FOURTH & MADISON
925 FOURTH AVENUE, SUITE 2500
SEATTLE WASHINGTON 98104
T 206.516.3800  F 206.516.3888

## VERIFICATION

I, Howard Schultz, being first duly sworn, verify that Canarsie Holdings LLC is the Plaintiff in the above-captioned matter, that I have read the foregoing Complaint and know the contents thereof, and, to the best of my knowledge, believe the allegations set forth therein to be true.

DATED this 22nd day of April, 2008, at Seattle, Washington.

_____
Howard Schultz

STATE OF WASHINGTON     )
                        ) ss.
COUNTY OF KING          )

On this day personally appeared before me, the undersigned, a Notary Public in and for the State of Washington, duly commissioned and sworn, Howard Schultz, to me known to be the individual described in and who executed the within and foregoing instrument, and acknowledged that he signed the same as his free and voluntary act and deed, for the uses and purposes therein mentioned.

GIVEN under my hand and official seal this 22nd day of April, 2008.



_____
NOTARY PUBLIC in and for the State of Washington
Residing at Maple Valley, WA
My commission expires: 01-19-09
COMPLAINT– Page 13

YARMUTH WILSDON CALFO PLLC
FOURTH & MADISON
925 FOURTH AVENUE, SUITE 2500
SEATTLE WASHINGTON 98104
T 206.516.3800  F 206.516.3888